IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.<br>) |
| TRUSTEES OF ROWAN-CABARRUS COMMUNITY COLLEGE | )<br>)<br>) |
| Defendant. | )<br>) |

# COMPLAINT

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia" or the "Surety"), by and through counsel, states the following for its Complaint against Defendant Trustees of Rowan-Cabarrus Community College ("RCCC" or the "Owner"):

## I. PARTIES

1. Philadelphia is a corporation formed under the laws of the State of Pennsylvania with its principal place of business located in Bala Cynwyd, Pennsylvania, which is the location from which Philadelphia's high level officers direct, control, and coordinate Philadelphia's corporate activities. Thus, Philadelphia is a citizen of the State of Pennsylvania for purposes of diversity jurisdiction. Philadelphia is also duly qualified and authorized to transact business within the State of North Carolina.

2. RCCC is a public community college formed under the laws of the State of North Carolina and is located in Rowan County and Cabarraus County, North Carolina. Accordingly, RCCO is a citizen of the State of North Carolina for purposes of diversity jurisdiction.

1

## II. JURISDICTION & VENUE

3. This Honorable Court possesses original jurisdiction over Philadelphia's Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the matter in controversy is between citizens of different states (*i.e.*, a Pennsylvania plaintiff and a North Carolina defendant).

4. This Honorable Court possesses the power to declare the respective rights and other legal relations of Philadelphia and RCCC as requested herein pursuant to 28 U.S.C. § 2201(a).

5. Venue is proper in the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 113(c) because (1) RCCC is located in and/or operates in the Middle District of North Carolina and/or (2) a substantial part of the events/omissions giving rise to Philadelphia's claims occurred in the Middle District of North Carolina.

## III. FACTUAL ALLEGATIONS

### The Construction Contract

6. RCCC and W.C. Construction Company LLC ("WCCC," the "Contractor," and/or the "Principal") entered into a construction contract dated February 4, 2020 (the "Construction Contract" or the "Bonded Contract") in relation to a construction project in Salisbury, North Carolina referred to in the Construction Contract as ID# 07-16812-01A-1 for construction related to the Outdoor Learning Center located at the Rowan-Cabarrus Community College North Campus and also referred to as Rowan-Cabarrus Community College Outdoor Learning Center Phase II-SCO#17-16812-01A (the "Project").

7. Upon information and belief,[1] Article 33 of the Construction Contract states, in pertinent part:

> **ARTICLE 33 – PAYMENTS WITHHELD**
> a. The designer with the approval of the State Construction Office may withhold payment for the following reasons:
>    1. Faulty work not corrected.
>    2. The unpaid balance on the contract is insufficient to complete the work in the judgment of the designer.
>    3. To provide for sufficient contract balance to cover liquidated damages that will be assessed.

### The Performance Bond

8. Philadelphia issued Performance Bond No. PB00155801041 (the "Performance Bond") on behalf of WCCC in relation to the Construction Contract. A copy of the Performance Bond is attached hereto as **Exhibit 1**.

9. The Performance Bond names WCCC as the principal, Philadelphia as the surety, and RCCC as the contracting body/owner, thereunder.

10. The Performance Bond's penal sum is $1,492,000.00, which equaled the initial price of the Construction Contract.

11. The operative language of the Performance Bond provides, in relevant part:

> KNOW ALL MEN BY THESE PRESENTS, that we, the principal and surety above named, are held and firmly bound unto the above named contracting body, hereinafter called the contracting body, in the penal sum of the amount stated above for the payment of which sum well and truly be made, we bind, ourselves, our heirs, executors, administrators, and successors, jointly and severally, firmly by these presents.
>
> THE CONDITION OF THIS OBLIGATION IS SUCH, that whereas the principal entered into a certain contract with the contracting body, identified as shown above and hereto attached:
>
> NOW, THEREFORE, the principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of said contract during

---

[1] The various terms, provisions, conditions, specifications, *etc*., which comprised the Construction Contract, are in the possession, custody, and/or control of RCCC.

3

the original term of said contract and any extensions thereof that may be granted by the contracting body, with or without notice to the surety, and during the life of any guaranty required under the contract, and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue.

## The Payment Bond

12. Philadelphia issued Payment Bond No. PB00155801041 (the "Payment Bond" and collectively with the Performance Bond, the "Bonds") on behalf of WCCC in relation to the Construction Contract. A copy of the Payment Bond is attached hereto as **Exhibit 2**.

13. The Payment Bond names WCCC as the principal, Philadelphia as the surety, and RCCC as the contracting body/owner, thereunder.

14. The Payment Bond's penal sum is $1,492,000.00, which equaled the initial price of the Construction Contract.

15. The operative language of the Payment Bond provides, in relevant part:

KNOW ALL MEN BY THESE PRESENTS, that we, the principal and surety above named, are held and firmly bound unto the above named contracting body, hereinafter called the contracting body, in the penal sum of the amount stated above for the payment of which sum well and truly to be made, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally, firmly by these presents.

THE CONDITION OF THIS OBLIGATION IS SUCH, that whereas the principal entered into a certain contract with the contracting body identified as shown above and hereto attached:

NOW, THEREFORE, if the principal shall promptly make payment to all persons supplying labor/material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue.

## Problems with the Project and the Relevant Correspondence

16. The Project included the construction of an outdoor amphitheater.

17.     Sometime after the work on the Project was commenced, certain alleged deficiencies were identified with the stairs and/or risers of the amphitheater.

18.     On or around February 24, 2021, WCCC issued a letter asserting rights pursuant to Article 30 (Contractor's Right to Stop Work or Terminate the Contract) of the General Conditions of the Project.

19.     In a letter dated March 16, 2021, Nick Lowe ("Mr. Lowe") of McAdams, the engineer for the Project, provided William Cockerham ("Mr. Cockerham") of WCCC with a list of punch list items for the Project. This correspondence is attached hereto as **Exhibit 3**.

20.     Also on March 16, 2021, Mr. Lowe notified Mr. Cockerham of the intent to release Pay Application # 8. Also included in this email correspondence were Michael Ali and Jeffrey Hinkle of the North Carolina Department of Administration's State Construction Office; Jonathan Chamberlain, Danny Carpenter, Jim Atkinson, and Dennis Davidson of RCCC; David Malcom of McAdams; Jim Harris and Dan Hill of LaBella Associates PC; and Bryan Badeaux of Philadelphia (collectively, the "Correspondence Parties"). This email correspondence is attached hereto as **Exhibit 4**.

21.     In response to the March 16, 2021, email correspondence, Bryan Badeaux ("Mr. Badeaux"), Senior Surety Claims Counsel for Philadelphia, notified the Correspondence Parties that it was in receipt of several payment bond claims and, in addition, was aware of certain alleged deficiencies in WCCC's work on the Project. This email correspondence is attached hereto as **Exhibit 5**.

22.     In this email correspondence, Mr. Badeaux also advised the Correspondence Parties of its concern of exposure to potential losses under the Bonds. To protect Philadelphia's rights of subrogation and to enable Philadelphia to protect its interests under the Bonds, Mr. Badeaux

5

directed the Correspondence Parties not to release any further funds to anyone under the Bonds (the "Bonded Contract Funds") without its express written consent and direction.

23. On March 23, 2021, Mr. Lowe sent a pay application markup to Mr. Cockerham and identified certain deficient and/or uncomplete items on the March 16, 2021 punch list. Mr. Lowe stated that Bonded Contract Funds in the amount of $239,666.32 would be released between the remaining three pay applications. This correspondence and the related pay application markups are attached hereto as **Exhibit 6**.

24. On March 23, 2021, Mr. Lowe sent a copy of the March 23, 2021 pay application markup to the Correspondence Parties, representing that any future payments to WCCC would not be released without Philadelphia's prior review and consent. This email correspondence and its attachments are attached hereto as **Exhibit 7**.

25. In a letter dated April 6, 2021, Mr. Lowe informed Mr. Cockerham, among other things, that "Pay withheld will be in the amount of $239,666.32. If you would like for pay to be released please make the requested pay application edits from the document dated March 23, 2021. Once these are made **and contingent of the surety company's approval, funds will be released**." (emphasis added). This correspondence is attached hereto as **Exhibit 8**.

26. Following adjustments to the pay application and associated markups, on April 13, 2021, Philadelphia approved the progress payment of $263,977.15 of Bonded Contract Funds to WCCC. This email correspondence is attached hereto as **Exhibit 9**.

27. No further requests were made to Philadelphia for the release of Bonded Contract Funds.

28. Accordingly, Philadelphia did not approve the release of any Bonded Contract Funds after its April 13, 2021 approval of the $263,977.15 progress payment to WCCC.

29. On or around April 23, 2021, RCCC, WCCC, and McAdams entered into an agreement identified as the Article 30 Payment Resolution (the "Agreement"). The Agreement is attached hereto as **Exhibit 10**.

30. The second numbered paragraph of the Agreement states, in pertinent part:

[RCCC, WCCC, and McAdams] agree that this Agreement shall act as an "invoice" documenting a payment to be released to WCCC in the amount of $263,977.15 and **funds to be withheld by RCCC in the amount of $238,337.25 until all remaining work items are complete**. The accounting for these amounts is as follows:

| | |
|---|---|
| Pay App #9 | $184,759.80 |
| Pay App #10 | $231,579.60 |
| Pay App #11 | $85,975.00 |
| Total | $502,314.40 |
| Payment Withheld | ($238,337.25) |
| Payment Released | $263,977.15 |
| | |
| Project Summary | |
| Original Contract Sum | $1,492,000.00 |
| Net Charge by Change Orders | $63,870.00 |
| Contract Sum to Date | $1,555,870.00 |
| Total Completed and Stored to Date | $1,506,634.00 |
| Difference | $49,236.00 |
| Retainage (5%) | $75,331.70 |
| Balance to Finish (w/ Retainage Only) | $124,567.70 |
| Balance to Finish (w/ Retainage Withheld) | $362,904.95 |

(Exhibit 10) (emphasis added).

31. After providing notice to WCCC and providing an opportunity to correct the deficiencies, a takeover letter was issued on or around September 8, 2021. RCCC and/or McAdams subsequently solicited bids from other contractors for the completion of the Project.

32. On November 1, 2021, Mr. Lowe notified Mr. Badeaux that "the amount of funds withheld for the project will not cover the amount necessary to complete the work described in the takeover letter." A copy of this email correspondence is attached hereto as **Exhibit 11**.

33. On December 16, 2021, Philadelphia participated in a contractual mediation between RCCC, WCCC, and McAdams.

34. During the December 16, 2021 mediation, Philadelphia learned for the first time that RCCC authorized an additional release of $238,337.25 of Bonded Contract Funds to WCCC without its knowledge, express written consent, or direction.

35. Upon information and belief, RCCC authorized the additional release of $238,337.25 of Bonded Contract Funds to WCCC with the knowledge that the work was deficient and/or incomplete.

## IV. CAUSE OF ACTION

### Declaration that Philadelphia's Obligations Have Been Fully Discharged

36. Philadelphia incorporates the foregoing allegations as if fully restated verbatim herein.

37. The initial price of the Construction Contract was $1,492,000.00, which was also the penal sum of the Bonds.

38. The Agreement required RCCC to withhold Bonded Contract Funds in the amount of $238,337.25 until all remaining work items were complete.

39. On March 16, 2021, to protect its rights of subrogation and to enable Philadelphia's protection of its interests under the Bonds, Philadelphia directed RCCC not to release any further Bonded Contract Funds to anyone without its express written consent and direction.

40. On or around March 23, 2021, RCCC and McAdams requested Philadelphia's consent to the release of Bonded Contract Funds to WCCC.

41. On April 13, 2021, Philadelphia approved the release of Bonded Contract Funds in the amount of $263,977.15 to WCCC.

42. No further requests were made to Philadelphia for the release of the remaining of Bonded Contract Funds.

43. Philadelphia did not approve the release of any portion of the remaining Bonded Contract Funds.

44. Philadelphia reasonably relied upon McAdams's promise to notify Philadelphia, and obtain Philadelphia's consent, prior to releasing any remaining Bonded Contract Funds.

45. RCCC was aware of McAdams's promise to notify Philadelphia, and obtain Philadelphia's consent, prior to releasing any remaining Bonded Contract Funds.

46. RCCC's authorization was made without Philadelphia's knowledge, express written consent, and/or direction.

47. Philadelphia was prejudiced by the unauthorized release of Bonded Contract Funds.

48. Therefore, Philadelphia is entitled to a declaration that its obligations to RCCC under the Bonds are fully discharged or, in the alternative, are discharged *pro tanto*.

49. In addition to the foregoing and without admitting any liability to RCCC, Philadelphia asserts that any liability of Philadelphia to RCCC is limited by the wrongful discharge of its principal, WCCC, RCCC's failure to mitigate its damages, and the economic waste doctrine.

50. Philadelphia hereby asserts all defenses its principal, WCCC, has or may have against RCCC's existing or future claims against it related to or arising from the Construction Contract, the Bonded Contract, the Project, the Performance Bond, the Payment Bond, the Bonded Contract Funds, and/or the Agreement including, but not limited to, wrongful discharge, failure to mitigate damages, and the economic waste doctrine.

51. Philadelphia reserves the right to assert additional claims and/or defenses as may be proper after a more complete investigation.

WHEREFORE, PREMISES CONSIDERED, Philadelphia prays for the following relief:

a. For the issuance of process requiring RCCC to answer Philadelphia's Complaint;

b. For the entry of a Judgment declaring that Philadelphia's obligations to RCCC under the Bonds are fully discharged or, in the alternative, are discharged *pro tanto*; and

c. For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause.

Respectfully submitted,

/s/ Jeffrey S. Price
Jeffrey S. Price    N.C. Bar No. 42590
MANIER & HEROD
1201 Demonbreun Street, Ste. 900
Nashville, Tennessee 37203
Phone: (615) 244-0030
Fax: (615) 242-4203
jprice@manierherod.com

*Attorney for Plaintiff Philadelphia Indemnity Insurance Company*